T.C. Memo. 2002-286

UNITED STATES TAX COURT

DUANE S. ASHLEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5151-00L.            Filed November 25, 2002.

Duane S. Ashley, pro se.

<u>Steven M. Webster</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  The petition in this case was filed in response to a "NOTICE OF DETERMINATION CONCERNING COLLECTION ACTION(S) UNDER SECTION 6320 and/or 6330" (notice of determination).

We must consider whether respondent may proceed with collection with respect to petitioner's taxable year 1989.  We hold

that respondent may.

                          FINDINGS OF FACT

Virtually all of the facts have been deemed established pursuant to the Court's Order under Rule 91(f)[1] dated September 5, 2002.

Petitioner resided in Beaufort, South Carolina, on the date he filed the petition in this case.

Petitioner worked for the U.S. Government (Government) from 1973 until January or February 1987, when the Government discharged him.  At the time of his discharge, petitioner was working for the Parris Island Marine Corps Recruit Depot.  After his discharge in early 1987, petitioner made various claims against the Government, which were not resolved to his satisfaction.  In an effort to have such claims resolved by a Federal court, petitioner decided not to, and did not, file a Federal income tax return (return) for taxable year 1989 or any taxable year thereafter.

On August 12, October 7, November 18, and December 30, 1991, respondent sent petitioner delinquency notices with respect to his taxable year 1989.

On April 28, 1992, respondent sent by certified mail to petitioner's last known address, i.e., Star Route 6, Box 295½A,

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure.  All section references are to the Internal Revenue Code in effect at all relevant times.

Beaufort, South Carolina 29902 (Route 6 mailing address), a notice of deficiency (notice) with respect to petitioner's taxable year 1989.[2]  The USPS notified petitioner on April 29, 1992, and again on May 5, 1992, about the certified mail from respondent that it was attempting to deliver to him.  On May 13, 1992, the USPS returned that certified mail to respondent as "unclaimed".

In the notice that respondent issued to petitioner with respect to taxable year 1989, respondent determined, inter alia, that for that year petitioner had nonemployee compensation totaling $31,302 and interest income totaling $63.  In the notice, respondent further determined for taxable year 1989 a deficiency of $9,022 in Federal income tax (tax) and additions to tax under sections 6651(a)(1) and 6654 of $2,256 and $608, respectively.  Petitioner did not petition the Court with respect to the notice issued by respondent relating to his taxable year 1989.

On September 28, 1992, respondent assessed tax of $9,022 and additions to tax under sections 6651(a)(1) and 6654 of $2,256 and $608, respectively, with respect to petitioner's taxable year 1989, as determined in the notice.  On September 28, 1992,

---

[2]Petitioner resided in the property at the Route 6 mailing address throughout 1992 and thereafter.  Sometime after 1992, the United States Postal Service (USPS) changed the mailing address of that property from the Route 6 mailing address to 14 Woodbine Avenue, Beaufort, South Carolina.

respondent also assessed interest of $2,994.50 that had accrued as of that date on such deficiency and such additions to tax. (We shall refer to such assessed tax, assessed additions to tax, and assessed interest, as well as any interest thereon as provided by law which respondent has not assessed but which accrued after September 28, 1992, as petitioner's unpaid liability for 1989.)

On September 28 and December 7, 1992, and January 11, 1993, respondent sent petitioner notices of balance due with respect to petitioner's unpaid liability for 1989. On September 28, 1993, respondent filed a notice of Federal tax lien with respect to petitioner's taxable year 1989.[3] On January 10, 1997, a payment of $192.55 was made by levy with respect to petitioner's taxable year 1989.[4] On March 31, 1999, respondent issued a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (notice of intent to levy) with respect to petitioner's taxable year 1989.

On or before April 29, 1999, in response to the notice of intent to levy, petitioner filed Form 12153, Request for a

---

[3]The Federal tax lien filed on Sept. 28, 1993, was not a collection action subject to sec. 6320. See sec. 301.6320-1(a)(1), (b)(2) Q&A-B2, Proced. & Admin. Regs.; see also Nicklaus v. Commissioner, 117 T.C. 117, 118 n.3 (2001).

[4]The levy made on Jan. 10, 1997, was not subject to sec. 6330. See sec. 301.6330-1(a)(1), (3) Q&A-A4, (4) Example 1, Proced. & Admin. Regs.; see also Nicklaus v. Commissioner, supra.

Collection Due Process Hearing (Form 12153).  In Form 12153, petitioner alleged:

> Have been requesting hearing for almost 10 years now from local and Atlanta agents and no response except liens and seizure of bank account in excess of actual amount in account, by local agent * * *.  Not taking into consideration or complying with your own instructions by field agents has led to this.  I want my day in Federal Court and am again requesting such

On January 19, 2000, petitioner submitted to respondent's Appeals Office (Appeals Office) Form 433-A, Collection Information Statement for Individuals (Form 433-A).  In that form, petitioner indicated that he had two dependents--the mother of his son and their son.  Petitioner indicated in Form 433-A that he owned:  His home located in Beaufort, South Carolina, which he valued at $77,000; four automobiles, two of which he did not value, one of which he valued at $6,500, and one of which he valued at $1,500; three boats which he did not value; and certain tools of trade on which he placed a "current pawn value" of $5,000 to $7,500 and a "replacement value" of $20,000 to $25,000.  In Form 433-A, petitioner indicated that his monthly compensation varied but that it was around $2,000 and that his monthly total expenses were $1,300.  In response to a question in Form 433-A asking for "Additional information or comments", petitioner stated:  "Dept of Navy owes me disability from Oct '86 thru current".

According to the Appeals Office Case Memorandum relating to

the notice of intent to levy with respect to petitioner's taxable

year 1989,

> Mr. Ashley [petitioner] makes claims that he cannot pay
> the amount due.  He included another letter with his
> protest alluding to a large government debt owed him
> from another agency for disability payments which he
> claims were improperly denied.  He believes that the
> Internal Revenue Service should help him in his cause
> to recover what he believes are his benefits and then
> share in those benefits to pay the taxes at hand.

>     *        *        *        *        *        *        *

> In the instant case, Mr. Ashley in his protest claims
> not that he doesn't owe the tax, but that the liability
> should be offset by the debt owed him by another fed-
> eral government agency.  It should be noted that the
> assessment at hand was made under "substitute for
> return" procedures and is not from a voluntarily filed
> tax return.  Therefore, Mr. Ashley may file an original
> tax return to correct the amount of tax at any time
> based upon relevant records he may have.

>     *        *        *        *        *        *        *

> Mr. Ashley responded to a letter sent by the settlement
> officer saying in a phone message that he would be
> amenable to completing a financial statement to declare
> his inability to pay.  Such a financial statement was
> sent to Mr. Ashley with instructions to complete as
> fully as possible and return to the settlement officer
> for evaluation.  His overture at not being able to pay
> should be treated as a collection alternative within
> the meaning of the new Restructuring and Reform Act of
> 1998 as it applies here.

>     *        *        *        *        *        *        *

> A telephone conference was agreed upon and held with
> Mr. Ashley. * * *

> Mr. Ashley went over his claim that the Internal Reve-
> nue Service should straighten out his problem with the
> Department of the Navy, which he said denied his dis-
> ability claim. * * *

Mr. Ashley was again advised that he could file an original tax return for 1989. * * *

     *        *        *        *        *        *        *

The financial information submitted by Mr. Ashley indicates that he has equity in property from which some funds may be generated.  Mr. Ashley houses not only himself but his common law wife and their natural son.  Thus, there are three who are claimable as dependents for purposes of determining disposable income. Mr. Ashley indicated that his wife does not work and that his income is the sole income of the household. An analysis of his monthly income over allowable expenses reveals the following:

| Income | Expense Type | Expense Amount |
|---|---|---|
| $2,000 | National Std. | $   781* |
| | Housing & Util. | $   350** |
| | Transportation | $   235*** |
| | Total | $1,366**** |

*3 people in household, source: BLS 10/99.
**as claimed but unsubstantiated, no housing purchase or rental expense is involved or included.
***as allowed for one car, no purchase expense is involved or included.
****Mr. Ashley's claim reflects monthly expenses of $1,300.

Footnote:  The home and autos are paid for.  Mr. Ashley claims that he lost his health and life insurance because of the circumstances described above.

Applying a present value to the excess income over expenses yields a total of $25,994 [$634 per month x 41 months left on statute = $25,994].

According to the county valuation of Mr. Ashley's realty and the information on encumbrances, he has the full equity of the home because he had satisfied the mortgage.  The county valuation is $75,353.  There are no available valuations for the vehicles or boats in Mr. Ashley's possession.  However, it is unnecessary to obtain that information because the addition of present value to the equity in the realty substantially exceeds what is owed by Mr. Ashley.  Even reducing the value of

the realty by 20% leaves equity of $60,282.  Also,
eliminating present value in its entirety because of
the dischargeability of the taxes still leaves net
realizable equity substantially in excess of the amount
owed.

Mr. Ashley might have been entitled to enter into an
installment agreement but for the fact that he is not
current in his filing obligations.  [See IRM
5.14.1.4(4).]  Mr. Ashley was given ample opportunity
to file the delinquent, and as he indicated to the
settlement officer, taxable returns (all since 1989)
but unfortunately, has not done so.  He requested
assistance from the Internal Revenue Service in prepar-
ing the unfiled returns which, according to information
secured by the settlement officer, could not be of-
fered.  Therefore, an installment agreement isn't an
option for Mr. Ashley.

The settlement officer considered an offer in compro-
mise as an [sic] collection alternative.  However,
there are several reasons why an offer is inappropri-
ate.  As indicated above, Mr. Ashley's equity in assets
far exceeds the amount owed which precludes acceptance
based on "doubt as to collectibility".  Nor has he
claimed or demonstrated that there are any special
circumstances which would warrant consideration of an
"Effective Tax Administration" offer.  In any event,
the Service policy with respect to individuals who
submit offers is that they be current in filing all due
returns before their offers can be processed.  [See IRM
5.8.3.3(2).]  As noted above Mr. Ashley was not in
compliance with his filing responsibilities at the time
of his appeal nor has he become compliant in filing
since.

Mr. Ashley has not offered a viable collection alterna-
tive in his case.  Nor has he availed himself to date
of the opportunity to file an original income tax
return for the subject year which he claims verbally
would reduce the amount of tax due.  Further, Mr.
Ashley will not be available for a viable collection
alternative until such time that he becomes compliant
with his filing obligations.  Therefore, the following
conclusions and determinations are made in this matter.

The sending of the Notice of Intent to Levy was proper
under the circumstances.  Since no viable collection

alternative has been offered, the intrusiveness of the proposed levy is commensurate with the need to collect the revenue efficiently and in such a manner. Mr. Ashley was advised that the liability can be adjusted at any time if an accurate return is filed and substantiated. The sending of the Notice of Intent to Levy should thus be sustained.

On March 29, 2000, pursuant to section 6330, the Appeals Office issued to petitioner a notice of determination with respect to petitioner's taxable year 1989. That notice stated in pertinent part:

**<u>Summary of Determination:</u>**

The Service followed its procedural, administrative and legal guidelines in sending the Notice of Intent to Levy.

There were no viable collection alternatives advanced by the taxpayer.

The intrusiveness of the proposed levy is commensurate with the need to collect the revenue efficiently.

Attached to the notice of determination was a document entitled

"**<u>Attachment - 3193</u>**". That document stated in pertinent part:

<u>Matters Considered</u>

Whether the Service followed its procedural, administrative and legal guidelines in issuing the Notice of Intent to Levy.

As [sic] assessment of tax was made and notice and demand for payment followed. Failure to pay the amount occurred thereafter. Before levy can be made a Notice of Intent to Levy must first be issued. * * * The Service followed the required procedures in issuing the Notice of Intent to levy.

Whether any collection alternatives are advanced by the taxpayer and the viability of such offers.

The taxpayer proposed the Service act on his be-
half in seeking to recover damages the taxpayer
says are owed to him by another federal agency.
There is no established debt at this time, and
therefore, no power of levy against the debt to
recover the taxes owed.  The taxpayer was advised
that he could file an original income tax return
for the subject year but has yet to do so.  The
taxpayer was asked to file delinquent tax returns
but has not done so.  There were no other alterna-
tives offered.

Whether the proposed action would be unnecessarily
intrusive as against the need to collect the revenue
efficiently.

The intrusiveness of the proposed levy is commen-
surate with the need to collect the revenue effi-
ciently and in such a manner.  The failure to file
delinquent returns precludes the collection alter-
natives most often employed.

## OPINION

Where, as is the case here, the validity of the underlying
tax liability is not properly placed at issue, the Court will
review the administrative determination of the Appeals Office for
abuse of discretion.[5]  Sego v. Commissioner, 114 T.C. 604, 610
(2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

---

[5]Petitioner did not petition the Court with respect to the
notice that respondent issued to him relating to his taxable year
1989.  Moreover, although invited to do so by the Appeals Office,
petitioner did not prepare and file with the Appeals Office a
return for 1989.  At trial, petitioner testified that he did not
know what he owed for his taxable year 1989.  Assuming arguendo
that petitioner had properly placed at issue the validity of the
underlying tax liability at issue, on the record before us, we
find that petitioner has failed to establish that petitioner's
unpaid liability for 1989 is not valid.

Petitioner asks the Court to grant him various remedies, including full compensation for claimed disability benefits, appropriate redress for his alleged wrongful discharge by the Government, an investigation of various complaints against the Internal Revenue Service, and relief from petitioner's unpaid liability for 1989 and for any unpaid liabilities for taxable years thereafter.

We do not have the authority to resolve any of the matters raised by petitioner except the issue as to whether respondent may proceed with collection with respect to petitioner's taxable year 1989. The record is devoid of any evidence establishing that respondent abused respondent's discretion in determining in the notice of determination to proceed with collection with respect to that year. On the record before us, we find that respondent did not abuse respondent's discretion in making that determination.

We have considered all of petitioner's arguments and contentions which are not discussed herein relating to whether respondent may proceed with collection with respect to petitioner's taxable year 1989, and we find them to be without merit and/or irrelevant.

To reflect the foregoing,

Decision will be entered for

respondent.